IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00761-PAB

ALEXANDRA L. MASCARENAS,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Alexandra L. Mascarenas on March 14, 2019.  Plaintiff seeks review of the final decision of defendant Andrew Saul (the "Commissioner")[1] denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-83f.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).[2]

**I. BACKGROUND**

      On August 20, 2013, plaintiff filed an application for disability insurance benefits

_____

     [1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit.  *See* Fed. R. Civ. P. 25(d).

     [2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

("DIB") under Title II of the Act alleging a disability onset date of April 11, 2011.  R. at 12, 248.  The Social Security Administration originally denied plaintiff's claim on February 6, 2014.  R. at 104.  The ALJ affirmed the denial on November 5, 2015.  R. at 95.  On review, the Appeals Council remanded plaintiff's claim to the ALJ for an additional evaluation of plaintiff's claim.  R. at 99-102.  Specifically, the Appeals Council directed the ALJ to conduct further review of plaintiff's rheumatoid arthritis condition, including a directive to gather additional evidence, re-evaluate plaintiff's symptoms, and reconsider plaintiff's residual functional capacity ("RFC").  R. at 102.

On remand, a new hearing was held before the ALJ on March 1, 2018.  R. at 12.  On April 19, 2018, the ALJ issued a decision denying plaintiff's claim.  R. at 9.  The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2016 and did not engage in substantial gainful activity during the period of her alleged disability onset date, April 11, 2011, until her date last insured, December 31, 2016.  R. at 14.  The ALJ also determined that, through the date last insured, plaintiff had the following severe impairments: coronary artery disease; status post-stent placement; diabetes mellitus with neuropathy; rheumatoid arthritis; degenerative disc disease of the lumbar spine; and left shoulder rotator cuff tendinitis.  R. at 15.  The ALJ found that these impairments, taken together, did not meet or medically equal the severity of one of the regulations' listed impairments.  R. at 16.  The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. § 404.1567(b),[3] "except [that] she could not operate foot or leg controls; she could not work at unprotected heights; she could occasionally handle or finger; she could occasionally keyboard; she could occasionally grip or grasp with force; and she could never reach overhead." R. at 17. The ALJ determined that plaintiff was unable to perform her past relevant work as a sign maker or sales production manager. R. at 23. However, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, such as furniture rental clerk or dealer account investigator. R. at 24. Ultimately, the ALJ concluded that plaintiff was not disabled at any time from April 11, 2011, through December 31, 2016. R. at 25.

On January 23, 2019, the Appeals Council denied review of plaintiff's claim. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel*

---

[3] Under 20 C.F.R. § 404.1567(b),

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2). Furthermore,

[a]n individual shall be determined to be under a disability only if his

4

> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden

of establishing a prima facie case of disability under steps one, two, and four, the

burden shifts to the Commissioner to show the claimant has the residual functional

capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731

(10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the

5

claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to explain why he rejected portions of the opinion of Dr. Corbett, a treating physician; (2) improperly rejecting the opinion of Dr. Holder, a treating physician, without a valid basis; and (3) failing to explain why he rejected portions of the opinions of Dr. Thomas, an examining physician.  Docket No. 16 at 3, 14, 20.  Defendant responds that the ALJ "evaluated every opinion and provided good reasons for the weight assigned to each."  Docket No. 17 at 2.

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p,

1996 WL 374188, *1 (July 2, 1996).[4]

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry.  In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p, 1996 WL 374188, *4.   The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c).  "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations

---

[4] In 2017, the regulations were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c.  Because plaintiff's claim was filed before 2017, the former regulations apply.  *See* 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from your treating sources.").

omitted).  Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal.  *Watkins*, 350 F.3d at 1300-01.

When evaluating a treating or examining physician's opinion in relation to that of an non-treating physician, the examining or treating physician's opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1)).  However, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Accordingly, "the examining physician's report should be examined to see if it 'outweighs' the treating physician's report, not the other way around."  *Reyes v. Brown*, 845 F.2d 242, 245 (10th Cir. 1988).  An examining physician's opinion, however, is generally given more weight than a physician who did not examine the claimant.  "The regulations require an ALJ to give greater weight to the opinion of an examining physician . . . than that of a non-examining physician, or explain why the examining physician's opinion is not entitled to more weight."  *Havenar v. Astrue*, 438 F. App'x 696, 700 n.3 (10th Cir. 2011) (unpublished).

### A.  Dr. Austin Corbett

Dr. Corbett, a treating physician, opined on August 7, 2015 that plaintiff's condition limited the length of time she could sit, stand, and walk.  R. at 444.  He stated that plaintiff could sit for one hour total in an eight-hour workday and could be on her

feet for thirty minutes in an eight-hour workday.  *Id.*  He opined that plaintiff could carry 10 pounds and could seldom[5] stoop, squat, crawl, or kneel.  R. at 444-45.  Finally, he stated that plaintiff's condition restricted the ability to use her upper extremities and that she could occasionally[6] reach, handle, and finger using both her left and right hands. R. at 445.  Ultimately, he concluded that plaintiff is not able to work any job on a full-time basis.  R. at 446.[7]

The ALJ gave Dr. Corbett's opinion "only some weight."  R. at 22.  The ALJ discounted Dr. Corbett's opinion because he had only treated plaintiff on a few occasions and "his opinion [was] not completely supported by the medical record."  *Id.* Specifically, the ALJ noted that there was no objective evidence of any problem with plaintiff's knees, and there was no evidence supporting Dr. Corbett's assigned limitations on sitting, walking, or standing.  *Id.*  In addition, the ALJ noted that plaintiff's chief complaints to Dr. Corbett concerned hand and wrist pain.  *Id.*

Plaintiff argues that the ALJ erroneously failed to explain why he declined to follow some of Dr. Corbett's restrictions.  Docket No. 16 at 10.  Specifically, plaintiff contends that the ALJ "did not explain why he rejected Dr. Corbett's ten-pound lifting restriction or his restriction to seldom stoop and squat" and asserts that "nothing in the ALJ's explanation undermines Dr. Corbett's lifting and stooping restrictions."  *Id.* at 12.

---

[5] "Seldom" was defined as "up to one hour per day."  R. at 445.

[6] "Occasionally" was defined as "up to 1/3 of a word day."  R. at 445.

[7] Dr. Corbett lists the tests and/or exam findings that support the limitations he found, but this information is illegible.  *See* R. at 446.

The Court disagrees with plaintiff.  Dr. Corbett's records note that plaintiff had trouble handling objects and sometimes dropped items, R. at 456, and his fingering and handling restrictions were made accordingly.  R. at 445.  However, nothing in Dr. Corbett's records specifically discusses plaintiff's ability to lift objects so as to support Dr. Corbett's limitations.  "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings."  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  Plaintiff does not argue that there is specific medical evidence in the record that supports Dr. Corbett's ten-pound lifting restriction; instead, plaintiff asserts that Dr. Corbett's lifting restrictions are necessarily supported by plaintiff's diminished range of motion in her fingers, which "would adversely affect lifting as much as it affects handling and fingering."  Docket No. 16 at 12-13.  While plaintiff is correct that difficulty in gripping may lead to difficulty in lifting, nothing in Dr. Corbett's records support his specific strength-based ten-pound lifting restriction as opposed to, for example, a fifteen-pound lifting restriction or a five-pound lifting restriction.  Because Dr. Corbett failed to link his lifting restriction to the medical evidence, the ALJ did not err in declining to adopt this restriction.  The Court finds that the ALJ's decision is supported by substantial evidence.

In addition, plaintiff argues that it was error for the ALJ to not adopt Dr. Corbett's stooping restriction because this restriction is supported by the record, asserting that, "[e]ven if plaintiff does not have knee problems, her lumbar degenerative disc disease found severe by the ALJ . . . supports Dr. Corbett's postural restrictions, especially with respect to stooping."  *Id.* at 13.  However, Dr. Corbett's reports do not reference

plaintiff's degenerative disc disease or any other spinal issues and do not indicate that plaintiff complained to Dr. Corbett about back pain.  *See, e.g.*, R. at 470-71; R. at 455-56.  As the ALJ found, plaintiff's "complaints to Dr. Corbett were almost exclusively complaints about hand and wrist pain."  R. at 22.  Thus, the ALJ did not err in declining to adopt Dr. Corbett's stooping restriction.  *Castellano*, 26 F.3d at 1029; *see also Weaver v. Colvin*, 2015 WL 506183, at *5 (D. Kan. Feb. 6, 2015) (finding that ALJ's decision to reject limitation opinions was supported by substantial evidence where the physician's limitation opinion was "not supported by [the physician's] own records" because the records did not "indicate limitations on lifting, sitting, walking, or standing").

### B.   Dr. Rebecca Holder

Plaintiff argues that the ALJ erred in "essentially rejecting" the opinions of Dr. Holder without valid reasons.  Docket No. 16 at 14.  On November 3, 2017, Dr. Holder opined that plaintiff could sit and be on her feet for one hour at a time and for four hours in a total day.  R. at 595.  She asserted that plaintiff needs to have her legs elevated during the work day: if standing or walking, for 15 minutes per hour, and if seated, for fifteen minutes every two hours.  *Id.*  Dr. Holder stated that plaintiff could rarely[8] reach or handle and could occasionally finger.  R. at 596.  The ALJ gave Dr. Holder's opinions "minimal weight."  R. at 23.  The ALJ noted that Dr. Holder's opinion was issued "nearly a year" after plaintiff's last insured date.  *Id.*  In addition, while finding that Dr. Holder is a treating physician, the ALJ highlighted that "[n]early all of

---

[8] "Rare" is defined as "less than ten repetitions per day."  R. at 596.

[Dr. Holder's] treatment relationship has occurred after the date last insured" and that Dr. Holder only examined plaintiff once during the period under review. *Id.* Finally, the ALJ stated that he "[could not] accept Dr. Holder's assertion that [plaintiff's] limitations had existed since 2015, when [Dr. Holder] had not personally examined [plaintiff] until the very end of 2016." *Id.*

Plaintiff asserts that "the ALJ's explanation does not provide a valid reason for rejecting Dr. Holder's opinions." Docket No. 16 at 15. First, she argues that a physician's opinion cannot be rejected "just because it does not deserve controlling weight." *Id.* at 16. However, the ALJ properly went through the first step of the treating-physician analysis, finding that Dr. Holder's opinion was not entitled to controlling weight. R. at 23. The ALJ then considered the factors set out in 20 C.F.R. § 404.1527(c), such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the consistency between the opinion and Dr. Holder's records, and "other factors . . . which tend to . . . contradict the opinion." *Id.*; 20 C.F.R. § 404.1527(c). While the ALJ did not expressly discuss every factor, this was not in error. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Instead, so long as the ALJ considers each factor and "give[s] good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion," the ALJ's assignment of weight is supported by substantial evidence. *Watkins*, 350 F.3d at 1301 (internal quotation marks and brackets omitted). The Court finds that the ALJ sufficiently explained why he assigned minimal weight to Dr. Holder's opinion.

Plaintiff raises a number of arguments attacking the ALJ's specific reasons for discounting Dr. Holder's opinion, none of which convince the Court that the ALJ's decision is not supported by substantial evidence.  For example, plaintiff makes several challenges to the ALJ's references to the time line of Dr. Holder's treatment relationship with plaintiff.  With respect to the ALJ's reference to the date that Dr. Holder's limitation opinion was issued, plaintiff asserts that "[t]here is no legal authority for the proposition that a medical opinion may be discounted for having been issued after the date last insured."  Docket No. 16 at 16.  Additionally, in response to the ALJ's note that Dr. Holder examined plaintiff only once before the date last insured, plaintiff argues that "there is no authority for the proposition that a treating physician's opinion is unsupported unless she has seen the claimant more than one time before [the] insured status expired."  *Id.* at 18; *see also id.* at 19 (arguing that the ALJ erred in referencing the fact that the treatment relationship occurred primarily after the date of last insured).

 Plaintiff construes the ALJ's decision too narrowly; the ALJ's focus on the timing of the treatment relationship provides context to why the ALJ discounted Dr. Holder's opinion, which the Court finds is a relevant consideration – particularly where, as here, plaintiff has a degenerative condition and her medical records indicate that her "condition may have worsened since [the] date last insured."  R. at 15; *see also* R. at 22 ("The claimant's conditions have only worsened since her date last insured.").

Plaintiff's last insured date was December 31, 2016.  R. at 14.  In December 2016 – the only time Dr. Holder treated plaintiff during the insured period – Dr. Holder noted plaintiff's complaints of constant shoulder pain, a decreased range of motion in

her shoulder, and that plaintiff's diabetes and rheumatoid arthritis were "uncontrolled." R. at 481.  However, with respect to plaintiff's joints, Dr. Holder observed no effusions, deformities, joint tenderness, erythema, or warmth, and did not indicate that plaintiff had complained of problems walking, sitting, or standing.  *Id.*  Nothing in this report supports the limitations assigned by Dr. Holder on November 3, 2017, such as her limitations on standing, walking, or elevating her legs.  *See* R. at 597.  This lack of support is a reasonable basis to discount Dr. Holder's opinion.  *Castellano*, 26 F.3d at 1029.  In addition, nothing in Dr. Holder's records from the insured period supports Dr. Holder's finding that plaintiff had these specific limitations since 2015.  *See* R. at 481. While "a treating physician may provide a retrospective diagnosis[,] . . . the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status. . . . A retrospective diagnosis without evidence of actual disability is insufficient.  This is especially true where the disease is progressive."  *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990).  Because of this lack of evidence, the Court finds that the ALJ did not err in giving Dr. Holder's opinion minimal weight.[9]

### C.   Dr. Thomas

Plaintiff challenges the ALJ's assignment of "some weight" to the opinion of Dr.

---

[9] In addition, plaintiff argues that "[t]he fact that the treatment notes [do not] address the need for plaintiff to elevate her feet does not mean Dr. Holder did not make that recommendation," noting that plaintiff "testified that Dr. Holder recommended that she elevate her feet."  Docket No. 16 at 17.  The Court finds that this argument is a request for the Court to re-weigh the evidence, which it cannot do.  *Benton v. Sullivan*, 801 F. Supp. 435, 439 (D. Colo. 1992).

Thomas, an examining physician.  Plaintiff argues that the ALJ failed to sufficiently explain which portions of Dr. Thomas' opinion he adopted and why, and why he rejected the other portions.  Docket No. 12 at 24-26.

Dr. Thomas opined on October 26, 2017 that plaintiff could lift a maximum of 20 pounds occasionally and never more than 20 pounds.  R. at 586.  He noted plaintiff's bilateral shoulder injuries and weakened grip strength.  *Id.*  He also opined that plaintiff can sit for two hours at a time, stand for one hour at a time, and walk for one hour at a time.  *Id.*  In an eight hour work day, according to Dr. Thomas, plaintiff could sit for four hours total, stand for three hours total, and walk for three hours total.  *Id.*  He stated that plaintiff could handle, finger, feel, push, and pull occasionally and could never reach overhead.  R. at 586-87.  Finally, he opined that plaintiff could climb stairs, balance, stoop, kneel, crouch, or crawl occasionally, but could never climb ladders or scaffolding.  R. at 587.

The ALJ noted that Dr. Thomas examined plaintiff only once, and did so nearly one year after the plaintiff's date last insured.  R. at 22.  The ALJ acknowledged, however, that Dr. Thomas "is familiar with the Agency's rules and regulations, and the assignment of functional limitations."  *Id.*  He also highlighted that "[t]he claimant's conditions have only worsened since her date last insured, but he still found light work appropriate."  *Id.*

Plaintiff argues that the ALJ cherry-picked portions of Dr. Thomas's opinion that support a finding of non-disability because "the ALJ did not explain why he found Dr. Thomas's opinion to credibly support a finding of ability to perform light work but not

15

credible enough to support three-hour limits on standing and walking." Docket No. 16 at 25.   Plaintiff misinterprets the ALJ's decision.  The ALJ sufficiently explained why he discounted Dr. Thomas's opinion – that he examined plaintiff only once and was not a treating physician.  R. at 22.  The ALJ highlighted that, despite the limitations that Dr. Thomas assigned to plaintiff, such as the three-hour standing and walking requirements, Dr. Thomas still found plaintiff capable of performing light work, which the ALJ ultimately agreed with.  *Id.*; R. at 24.  Thus, even if the ALJ had adopted Dr. Thomas's standing and walking limitation opinions, this would not discredit or contradict the ALJ's finding that plaintiff is capable of performing light work.  Plaintiff has not demonstrated that the ALJ committed reversible error here.

In addition, plaintiff appears to contend that the ALJ relied on incorrect jobs numbers to find that plaintiff was not disabled and could perform work.  *See* Docket No. 16 at 21 n.4.  Plaintiff asserts that, at the hearing, the ALJ erroneously stated to the vocational expert that plaintiff could perform the "full range of light work."  *Id.* at 23; *see also* R. at 72 (the ALJ giving the vocational expert a hypothetical situation which was "[l]imit[ed] to an exertional level in full range of light").   Plaintiff argues that, because the vocational expert relied upon a hypothetical that did not precisely relate all of plaintiff's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's decision.  *Id.* at 23-24.  However, even assuming that plaintiff is correct, plaintiff has not demonstrated that this error warrants reversal.  In response to the ALJ's hypothetical, the vocational expert testified that there were approximately 22,000 jobs nationally that plaintiff could perform at a light exertional

level.  R. at 72.  The ALJ then proffered another hypothetical, with the "restrictions in the first hypothetical" but with "modify[ing] the exertional level to sedentary," and asked the vocational expert whether there would be jobs available to plaintiff in this range.  R. at 73.  The vocational expert testified that there would be approximately 32,000 jobs nationally and 344 in Colorado with those restrictions.  *Id.*

Even if the ALJ mis-spoke at the hearing, he corrected this error in his decision when he acknowledged that plaintiff's "ability to perform all or substantially all of the requirements of [a full range of light work] was impeded by additional limitations."  R. at 24.  While the ALJ opined that plaintiff could perform light work, he also "note[d] that the claimant could additionally perform work at the sedentary level" as a call out operator, of which "[t]here are approximately 8,000 jobs nationally and 100 in Colorado."  R. at 24-25.  The ALJ ultimately concluded that plaintiff was capable of engaging in work "that existed in significant numbers in the national[10] economy."  R. at 25.  Thus, the Court finds that any error made during the hearing was harmless, *see Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), and finds that the ALJ's decision is supported by substantial evidence.  For these reasons, the Court will affirm the ALJ's decision.

## IV.  CONCLUSION

---

[10] In determining whether a claimant would be able to keep substantial gainful employment with his or her restrictions, courts look to the national, rather than the regional, economy.  *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with your physical or mental abilities and vocational qualifications.").

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED**.

DATED August 7, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge